IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ALLCHEM PERFORMANCE PRODUCTS,  §
INC.,                          §
                               §
            Plaintiff,         §
                               §
VS.                            §    CIVIL ACTION H-10-3224
                               §
AQUALINE WAREHOUSE, LLC,       §
CACTUS VALLEY POOL SERVICES AND §
REPAIR, L.L.C., DOING BUSINESS §
AS CACTUS VALLEY POOLS, CHAD   §
KENNEDY, AARON HAGEN, DAVID    §
HAGEN, SHINER WAREHOUSE, LLC,  §
SHINER CHEMICALS, LLC, AND     §
SHINER PRODUCTS, LLC,          §
                               §
            Defendants.        §

**OPINION AND ORDER**

Pending before the Court in this action alleging violations of the Copyright Act, 17 U.S.C. § 101, *et seq.* (copyright infringement), and the Lanham Act, 15 U.S.C. § 1125(a)(1)(unfair competition and/or false designation of origin, and/or false advertising) and state law claims, is Defendants Aqualine Warehouse, LLC ("Aqualine"), Chad Kennedy ("Kennedy'),[1] and Shiner Warehouse, LLC, Shiner Chemicals, LLC, and Shiner Products, LLC's (collectively, "Shiner entities'") motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure

---

[1] Chad Kennedy and/or Orlo Ison are registered agents for service of the Shiner entities in Arizona.  #31 at 8; Kennedy Affid., #31-1.  Kennedy's affidavit states that Aqualine has not been formally dissolved but is no longer conducting any operations.

-1-

12(b)(2), or, in the alternative, for improper venue under Rule
12(b)(3) and 28 U.S.C. § 1406(a),[2] or, in the alternative, to
transfer venue to the Phoenix Division of the District of Arizona
under 28 U.S.C. § 1406(a) because of improper venue or in the
interest of justice, or to transfer this action for convenience of
parties and witnesses in the interest of justice under 35 U.S.C. §
1404(a)(instrument #31).  Defendants maintain that they have no
connection or minimum contacts with Texas.

The Court has both diversity and federal question jurisdiction
pursuant to 28 U.S.C. § 1332[3] and § 1331.

### Plaintiff's Second Amended Complaint (#28)

To summarize the complaint in a nutshell, Plaintiff AllChem
Performance Products, Inc. ("AllChem") is a distributor of water
treatment chemicals, including trichloroisocyanuric acid, also
known as trichloro-s-triazenatrione, "TCCA," or "trichlor," which
is used to chlorinate swimming pools.  Trichlor is regulated by the
Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), 7
U.S.C. § 136 *et seq.*  The United States Environmental Protection

---

[2] Section 1406(a) provides, "The district court of a district
in which is filed a case laying venue in the wrong division or
district shall dismiss, or if it be in the interest of justice,
transfer such case to any district or division in which it could
have been brought."

[3] All Defendants are citizens of Arizona, while Plaintiff
AllChem Performance Products, Inc. ("AllChem") is a Texas
corporation registered in Houston, Harris County, Texas, doing
business in Texas and throughout other states of the United States.

Agency ("EPA") regulates the sale and distribution of trichlor and requires distributors, like Defendants, to register their products with the EPA.   The EPA publishes and maintains registration eligibility documents ("REDs") for FIFRA-regulated chemicals.  The EPA has assigned CAS Number 87-90-1 as the RED for trichlor. Plaintiff states that the RED is attached as Ex. A to Second Amended Complaint (#28), but apparently failed to submit it. Plaintiff asserts that it is a violation of federal law to offer to sell or to sell trichlor without a valid EPA registration.

Furthermore individual states also regulate the sale and distribution of trichlor and require that after obtaining its EPA registration, a distributor must also obtain a registration or permit from each state in which it intends to sell its products.

AllChem complains that Aqualine and Cactus Valley violated the laws of the States of Arizona and Texas by a scheme to sell trichlor bearing stolen registration numbers belonging to AllChem and by failing to register Aqualine trichlor at the state and federal level.  It further alleges that Defendants Kennedy, Aaron Hagen, and David Hagen conspired to engage in this illegal activity.   Furthermore if Defendant Shiner lacks valid registrations for its trichlor activities, it is also violates those laws in its activities with Cactus Valley, a customer.  The complaint further states that Kennedy uses Aqualine and Shiner as alter egos.

Many states, including Texas and Arizona, require anyone seeking to sell trichlor to display the appropriate registration indicators clearly and conspicuously on the product's label. Supported by an affidavit from its Chief Operating Officer, Alejandro Oclese (#33-1), AllChem states that it has invested time, talent, energy and material resources in developing not only its product line, but its unique label showing its EPA and state registrations, which constitutes a tangible expression covered by the federal Copyright Act and which Aqualine has fraudulently and illegally stolen and thereby caused damages of approximately $483,0976 to AllChem.[4]

Defendants other than Cactus Valley allegedly are in the business of purchasing, manufacturing, assembling, packaging, and

---

[4] As stated in *Community for Creative Non-Violence v. Reid*, 490, U.S. 730, 737 (1989),

> The Copyright Act of 1976 provides that copyright ownership "vests initially in the author or authors of the work." 17 U.S.C. § 201(a). As a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection. § 102. The Act carves out an important exception, however, for "works made for hire." If the work is for hire, "the employer or other person for whom the work was prepared is considered the author" and owns the copyright, unless there is a written agreement to the contrary. § 201(b).

"A work is created only when it is fixed in a final work product. Ideas and concepts are not copyrightable." *Looney Ricks Kiss Architects, Inc. v. Bryan*, Civ. A. No. 07-572, 2010 WL 5393859 *2 (W.D. La. Dec. 22, 2010), *citing M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486 (11th Cir. 1990).

distributing trichlor in Arizona, and, by virtue of online Internet sales, distributing the product throughout the United States. Aqualine did not register its trichlor with the EPA, the Department of Agriculture in Arizona or the Texas Department of Agriculture, as it was required to do.  Cactus Valley, a customer, purchased and distributed Aqualine's trichlor products to third parties and maintains a website that enables it to sell to purchasers throughout the United States and potentially around the world. Without obtaining AllChem's permission, Defendants use labels identical in form, format, design, and appearance to AllChem's label and display the registration numbers of AllChem in Texas, except that they replace "TX" with "AZ."  AllChem has no control over the manufacture, assembly, packaging, marketing or distribution of or knowledge of the origin of Defendants' trichlor.

Thus AllChem claims that Aqualine, aided by Cactus Valley, stole and converted AllChem's tangible, as well as intellectual, property, and its label and Texas registration, to sell a product it had no legal authority to sell, and thereby impaired AllChem's ability to compete effectively.

Plaintiff further asserts that Kennedy and the Shiner entities unlawfully imported trichlor from an as-yet-unidentified supplier in China, from which it was shipped to California, then trucked to Mexico, and then to Arizona in violation (1) of the North American

Free Trade Agreement ("NAFTA"), 32 I.L.M. 605 (May 1993),[5] (2) of the Copyright Act, 17 U.S.C. §§ 102(a)(1)(label as a literary work), 102(a)(6)(label as a pictorial and graphic work), and 101 (tangible medium), and (3) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)(false and misleading labels likely to cause confusion, mistake or deception as to the origin, sponsorship, or approval of Aqualine's trichlor).

### Defendants' Motion to Dismiss (#31)

With a supporting declaration from Chad Kennedy, Defendants Aqualine, Kennedy, and the Shiner entities' motion states that they have never opened or maintained an office or business premises of any kind in Texas, hired any employees, servants or agents in Texas, owned or leased any real or personal property in Texas, opened or maintained any bank accounts in Texas, maintained a telephone, facsimile or telex number in Texas, paid or owed taxes to the State of Texas or any of its political subdivisions, been required to maintain or maintained a registered agent for service in Texas, engaged in business related to trichlor in Texas, committed a tort in whole or in part in Texas, been a party to a

---

[5] This Court observes that NAFTA cannot be enforced in domestic courts except in a suit brought by the United States; private actions are barred and a private citizen lacks standing to assert a claim against the government arising from an alleged NAFTA violation because NAFTA's enabling legislation limits a legal challenge to the United States. 19 U.S.C. §§ 3311 and 3312(c). *See, e.g., De La Cruz v. Gulf Coast Marine & Associates, Inc.*, Civ. A. No. 9-09-cv-167 (TJW), 2011 WL 846100, *3 (E.D. Tex. Mar. 7, 2011)(and cases cited therein).

lawsuit in Texas other than the instant action, sold trichlor to any entity or individual in Texas, or maintained a website permitting the sale of trichlor anywhere.  #31, Ex. A, Declaration of Chad Kennedy, ¶ 12.

Because as a matter of law there is no general jurisdiction here, Movants contend that specific jurisdiction does not exist either because AllChem's claims have no connection with the State of Texas and none of the alleged acts took place in Texas.  They have never sold products online or maintained an operational website.  They have only sold and/or distributed trichlor from their Arizona offices to Arizona entities and/or Nevada entities.

Furthermore, even if they had sufficient contacts with Texas, it would offend traditional notions of fair play and substantial justice to require Movants to litigate this action in Texas. Movants, Cactus Valley, Aaron and David Hagen, and third-party witnesses are all residents of Arizona.

Alternatively they request the Court to dismiss or transfer this case under 28 U.S.C. § 1406(a) for improper venue or transfer it under 28 U.S.C. 1404(a) for convenience and in the interests of justice.  Movants argue that the relevant witnesses are located in Arizona, the actions targeted in the Second Amended Complaint occurred in Arizona, the party and non-party witnesses are located in the District of Arizona, all of the named Defendants are located in Arizona, compulsory process to secure attendance of witnesses is

available in Arizona, the cost of attendance for willing witnesses would be lower, proof is more readily accessible in Arizona, and practical problems that make trial of a case easy, expeditious and inexpensive favor transfer to the Phoenix Division of the District of Arizona. Deference to a plaintiff's choice of forum "disappears" when, as here, the suit has no connection to the chosen venue. *Reed v. Final Oil and Chem. Co.*, 995 F. Supp. 705, 714 (E.D. Tex. 1998). This Court and the Phoenix federal district court probably have full dockets and both are familiar with federal copyright law and unfair competition law.

## Standard of Review

When a defendant files a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating that the court has personal jurisdiction over the defendant. *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006), *citing Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982).[6] At the pretrial stage of litigation, if the district court does not conduct a hearing on personal jurisdiction, the plaintiff need only present a prima

---

[6] "Absent any dispute as to the relevant facts, the issue of whether personal jurisdiction may be exercised over a nonresident defendant is a question of law . . . ." *Ruston Gas Turbines, Inc. v. Donaldson Co.,* 9 F.3d 415, 418 (5th Cir. 1993). Where the facts are disputed, the party seeking to invoke the court's jurisdiction bears the burden of establishing sufficient contacts with the forum state by the nonresident defendant to invoke the court's jurisdiction. *Bullion v. Gillespie*, 895 F.2d 213, 216-17 (5th Cir. 1990).

facie case of personal jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994); *Felch v. Transportes Lar-Mex S.A. DE CV,* 92 F.3d 320, 325 (5th Cir. 1996); *Johnston v. Multidata Systems Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).   Proof by preponderance of the evidence is not required.   *Johnston*, 523 F.3d at 609.[7]   When a defendant disputes

_____

[7] As the Fifth Circuit explained in *Walk Haydel & Associates, Inc. v. Coastal Power Production Co.*, 517 F.3d 235, 241-42 (5th Cir. 2008),

> Ultimately, the plaintiff must show by a preponderance of the evidence that jurisdiction is proper.   Often, the determination of whether this standard is met is resolved at trial along with the merits.   This is especially likely when the jurisdiction issue is intertwined with the merits and therefore can be determined based on jury fact findings.   In this situation it is often 'preferable that [the jurisdictional] determination be made at trial, where a plaintiff may present his case in a coherent, orderly fashion and without the risk of prejudicing his case on the merits.'   But this court has said that after a pretrial evidentiary hearing confined to the jurisdictional issue, where both sides have the opportunity to present their cases fully, the district court can decide whether the plaintiff has established jurisdiction by a preponderance of the evidence. [footnotes omitted]

The panel further opined, *id.* at 241.

> If the court determines that it will receive only affidavits or affidavits plus discovery materials, these very limitations dictate that a plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss.   Any greater burden such as proof by a preponderance of the evidence would permit a defendant to obtain a dismissal simply by controverting the facts established by a plaintiff through his own affidavit and supporting materials.

factual bases for personal jurisdiction, the district court may consider the record before it, including "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Quick Technologies, Inc. v. Sage Group PLC*, 313 F.3d 338, 344 (5th Cir. 2002)(*quoting Thompson v. Chrysler Motors Corp.*, 755 F.3d 1162, 1165 (5th Cir. 1985)), *cert. denied*, 540 U.S. 814 (2003); *Kelly Law Firm, P.C. v. An Attorney for You*, 679 F. Supp. 2d 755, 762 (S.D. Tex. 2009). The court has discretion as to the type and amount of discovery it will allow, but unless there is a full and fair hearing, it should not act as a factfinder and must construe all disputed facts in favor of the plaintiff. *Walk Haydel*, 517 F.3d at 241. On a motion to dismiss under Rule 12(b)(2), uncontroverted allegations in plaintiff's complaint are taken as true, and conflicts between facts in the parties' affidavits must be resolved in plaintiff's favor for purposes of the *prima facie* case of personal jurisdiction. *Johnston*, 523 F.3d at 609; *Kelly Law Firm*, 679 F. Supp. 2d at 762; *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). Nevertheless, the court is not required to credit conclusory allegations even if they are uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

The court must find that it has personal jurisdiction over the defendant before it makes any decision on the merits. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430

(2007); *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 623, n.2 (5th Cir. 1999)("Personal jurisdiction is an essential element of the jurisdiction of a district court, without which it is powerless to proceed to an adjudication.").

Under the federal rules, except where a federal statute provides for broader personal jurisdiction, the district court's personal jurisdiction is coterminous with that of a court of general jurisdiction of the state in which the district court sits. *Submersible Sys., Inc. v. Perforadora Central*, *S.A. de C.V.*, 249 F.3d 413, 418 (5th Cir. 2001). A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if the forum state's long-arm statute confers personal jurisdiction over that nonresident defendant and if the exercise of personal jurisdiction satisfies due process under the United States Constitution. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009), *citing Moncrief Oil Int'l, Inc. v. OAO Gasprom*, 481 F.3d 309, 311 (5th Cir. 2007). The Texas long-arm statute extends jurisdiction to the limits of the federal due process. *Schlobohm v. Schapiro*, 784 S.W. 2d 355, 357 (Tex. 1990); *Gonzalez v. Bank of America Ins. Servs., Inc.*, No. 11-20174, 2011 WL 6156856 *3 (5th Cir. Dec. 12, 2011), *citing Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 385 (5th Cir. 2008). Thus a plaintiff in a diversity action in federal

court in Texas[8] need only demonstrate that (1) the defendant purposely availed himself of the benefits and protections of the forum state by establishing that the defendant had minimum contacts with the forum state and (2) the exercise of personal jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Alpine View Co., Ltd. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000); *Moncrief Oil Int'l, Inc. v. OAO Gasprom*, 481 F.3d 309, 311 (5th Cir. 2007).

Personal jurisdiction can be either specific or general jurisdiction. *Mink v. AAAA Develop., LLC.*, 190 F.3d 333, 336 (5th Cir. 1999). "Where a defendant 'has continuous and systematic general business contracts' with the forum state, the court may exercise 'general jurisdiction over any action brought against the defendant [regardless of whether the action is related to the forum contacts]." *Luv N' Care*, 438 F.3d at 469, *citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984). *See also Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999)("General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed."),

---

[8] *See Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)("Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis.").

*cert. denied*, 531 U.S. 917 (2000).  "[T]he minimum contacts inquiry
is broader and more demanding when general jurisdiction is alleged,
requiring a showing of substantial activities in the forum state.
*Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068
(5th Cir.), *cert. denied*, 506 U.S. 867 (1992).  "[V]ague and
overgeneralized assertions that give no indication as to the
extent, duration, or frequency of contacts are insufficient to
support general jurisdiction." *Johnston*, 523 F.3d at 610.[9]

---

[9] In *Johnston*, the Fifth Circuit discussed how extremely
difficult it is to establish general jurisdiction over a
nonresident defendant.  523 F.3d at 610-11.  The panel examined the
Supreme Court's ruling in *Helicopteros*, 466 U.S. at 418-19, in
which it found that defendant's contacts with Texas purchasing
helicopters, spare parts, and accessories for more than $4 million
over a six-year period from a Texas company, sending management and
maintenance personnel to Texas for technical consultations and
prospective pilots to Texas for training, and receiving a check for
more than $5 million drawn on a Texas bank were insufficient to
support personal jurisdiction.   Among other cases from this
Circuit, *Johnston* cited *Cent. Freight Lines, Inc. v. APA Transp.
Corp.*, 322 F.3d 376, 381 (5th Cir. 2003), in which the Fifth Circuit
concluded that general jurisdiction did not exist even though the
defendant regularly arranged and received interline shipments to
and from Texas and sent sales people to Texas to develop business,
negotiate contracts and service national accounts; *Wilson v. Belin*,
20 F.3d 644, 651 (5th Cir. 1994)("Even if [the defendant's] contacts
with Texas via his short-lived malpractice insurance arrangement
through a Texas law firm and his multi-year *pro bono* association
with the historical society were arguably continuous, we hold that
they were not substantial enough to warrant the imposition of
general personal jurisdiction over him."); *Access Telecom*, 197 F.3d
at 717 (in order to confer general jurisdiction it is not
sufficient that a corporation do business in Texas; it must have a
business presence in Texas); *Alpine View Co. v. Atlas Copco AB*, 205
F.3d 208, 218 (5th Cir. 2000)(holding that general jurisdiction did
not exist where the defendant occasionally sold products to
entities in Texas that used the defendant's products for projects
in Texas and the defendant's employees made field visits to Texas
between December 1992 and December 1993).   *Johnston*, 523 F.3d at

If the defendant has relatively few contacts, the court may still exercise personal jurisdiction over that party if the suit arises out of or is related to the defendant's contacts with the forum." *Helicopteros*, 466 U.S. at 414 & n.8.  In such a case, the "'relationship among the defendant, the forum, and the litigation' is the essential foundation of in personam jurisdiction." *Id.* at 414, *citing Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). Furthermore, the Fifth Circuit has concluded that specific jurisdiction is "a claim-specific inquiry:  'A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim.'" *McFadi*n, 587 F.3d at 759, *quoting Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006).  Moreover, the Fifth Circuit has established a three-step analysis for determining whether specific jurisdiction exists:  "'(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there[10]; (2) whether the plaintiff's cause of action arises out of

---

610-12 (concluding that Multidata's sale of approximately $140,000 worth of goods over a five-year period to Texas customers and its employees' occasional travels to Texas to service equipment or attend trade conventions did not support general jurisdiction over Multidata).

[10] Purposeful availment requires a defendant to seek some benefit, advantage or profit by "availing" itself of the jurisdiction. *Michiana Easy Livin' Country, Inc. v. Holten*, 168

or results from the defendant's forum-related contacts[11]; and (3) whether the exercise of personal jurisdiction is fair and reasonable.'" *Seiferth*, 472 F.3d at 271, *quoting Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002).  The minimum contacts review is fact-intensive and no single contact is decisive; "the touchstone is whether the defendant's conduct shows that it 'reasonably anticipates being haled into court."  The defendant 'must not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or third party.''" *McFadin*, 587 F.3d at 759, *citing Luv N' Care*, 438 F.3d at 470 (*citing Word-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)), and *Electrosource, Inc. v. Horizon Battery Tech., Ltd.*, 176 F.3d 867, 871-72 (5th Cir. 1999)(*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)).  Thus specific jurisdiction may not be based upon the mere fortuity that a plaintiff is a Texas resident. *Santander Consumer USA, Inc. v. Shults Ford, Inc.*, Civ. A. No. 3:11-CV-614-L,

---

S.W. 3d 777, 785 (Tex. 2005).

[11] The litigation must also "result from the alleged injuries that 'arise out of or relate' to those activities." *Guardian Royal Exch. Assurance Ltd. v. English China Clays, P.L.C.*, 815 S.W. 2d 223, 228 (Tex. 1991), *citing Burger King, Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).  For specific jurisdiction, there "must be a substantial connection" between the nonresident defendant's contacts with the forum state and the "operative facts of the litigation." *Guardian Royal*, 815 S.W. 2d at 229-33.

2011 WL 2601520, *4 (N.D. Tex. June 30, 2011), *citing Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986).

Once the plaintiff has established that the defendant has minimum contacts with the forum state, the burden shifts to the defendant to show that assertion of jurisdiction would be unfair. *Walk Haydel*, 517 F.3d at 245. In determining whether the exercise of jurisdiction is fair and reasonable, the court examines five factors: "'(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies.'" *McFadin*, 587 F.3d at 759-60, *quoting Luv N' Care*, 438 F.3d at 473. If the plaintiff fails to establish the existence of minimum contacts with the forum state, the court need not reach the question of whether personal jurisdiction would offend traditional notions of fair play and substantial justice. *Renoir v. Hantman's Associates, Inc.*, 230 Fed. Appx. 357, 360(5th Cir. 2007).

### Venue

Under 28 U.S.C. § 1406(a), where venue is "laid in the wrong division or district," the district court must either dismiss the case or transfer it to a proper venue in "any district or division in which it could have been brought"; or a court may transfer it "to any other district or division where it might have been brought

or to any district or division to which all parties have consented" under 28 U.S.C. § 1404(a) "for the convenience of parties and witnesses, in the interest of justice."

"[A] district is 'wrong' within the meaning of § 1406 whenever there exists an 'obstacle (to) an expeditious and orderly adjudication' on the merits." *Ellis v. Great Southwestern Corp.*, 646 F.2d 1099, 1105 (5th Cir. 1981)  Lack of personal jurisdiction is a ground for such a transfer. *Ellis*, 646 F.2d at 1105 and n.7.

Once a defendant challenges venue as improper under Federal Rule of Civil Procedure 12(b)(3), the plaintiff bears the burden of demonstrating that the chosen venue is proper. *Am. Gen. Life Ins. Co. v. Rasche*, 273 F.R.D. 291, 396 (S.D. Tex. 2011).  In deciding whether the venue is proper, the court may look at evidence in the record beyond those facts alleged in the complaint and its admissible attachments. *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009)(*citing Ginter ex rel. Ballard v. Belcher, Prendergast & Laport*, 536 F.3d 439, 448 (5th Cir. 2008)), *cert. denied*, 130 S. Ct. 1054 (2010).  On a Rule 12(b)(3) motion, the Court must accept as true all the allegations in the complaint and resolve all factual conflicts in favor of plaintiff. *Hamilton v. United Parcel Service, Inc.*, Civ. A. No. 1:11-CV-240, 2012 WL 760714, *5 (E.D. Tex. Feb. 13, 2012), *citing Braspetro Oil Services, Co. v. Modec (USA), Inc.*, No. 06-20561, 240 Fed. Appx. 612, 615 (5th Cir. May 11, 2007), and 5B Charles Alan Wright &

-17-

Arthur R. Miller, *Federal Practice and Procedure* § 1352 (3d ed. 2004). The decision whether to dismiss or transfer the case under § 1406(a) lies within the discretion of the Court. *Dubin v. United States*, 380 F.2d 813, 815 (5th Cir. 1967).

Alternatively, the district court has broad discretion to transfer a case under 28 U.S.C. 1404(a) for the convenience of parties and witnesses and in the interest of justice.[12] *In re Volkswagen of America, Inc.*, 545 F.3d 304, 311 (5th Cir. 2008). Nevertheless the court must initially determine whether a civil action "'might have been brought' in the destination venue." *Id.* at 312. The general venue statute, 28 U.S.C. § 1391, governs a plaintiff's choice of venue. *Id.* Under § 1391(a) Under § 1391(b),

A civil action may be brought in–

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

_____

[12] It is improper for the court to consider the convenience of counsel, which is irrelevant, in reviewing a transfer of venue under § 1404(a). *In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004).

-18-

"[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege." *In re Volkswagen*, 545 F.3 at 313.  Under § 1404(a) the court is not authorized to dismiss the case, as it is under 1406(a).  *Id.*

The Fifth Circuit has adopted the private and public interest factors set forth in *Gulf Oil Corp. v. Gilbert*, a *forum non conveniens* case, and applied them to determine whether a transfer is for the convenience of the parties and witnesses and in the interest of justice under 28 U.S.C. § 1404(a).  *In re Volkswagen*, 545 F.3d at 313 & nn.9 and 10 *(citing Humble Oil & Refining Co. v. Bell Marine Service, Inc.*, 321 F.3d 53, 56 (5th Cir. 1961)), *cert. denied*, 555 U.S. 1172 (2009).  The moving party must show good cause for the transfer.  *In re Volkswagen of America, Inc.*, 545 F.3d at 314.  "When the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.*  The private interest factors are "'(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 315.  The public interest factors include "'(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized

-19-

interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.'"  *Id.*  These factors, while appropriate for most cases, are not exhaustive or exclusive, and none is dispositive. *Id.*

### Plaintiff's Response (#33)

In responding to Defendants' motion to dismiss or transfer, Plaintiff reiterates many points asserted in the Second Amended Complaint.  By Defendants' actions and failure to comply with federal and state registration requirements and laws regulating the importation of products from foreign sources, claims Plaintiff, Movants are able to offer trichlor at a price below the fair market value.  These unfair competition practices provide them with a market share that they would not otherwise have and have caused and will continue to cause AllChem serious damage.  AllChem claims that Chad Kennedy is the mastermind behind the scheme; he forms one company after another to perform the illegal activities described, with Shiner Products being the most recent known entity.[13]  It further argues that Defendants' unfair competition not only

---

[13] After Shiner Warehouse filed for bankruptcy, Shiner Products was incorporated.  AllChem claims, "Kennedy's *modus operandi* is to form an entity, rack up a significant number of debts, and then file for bankruptcy, at which point he forms a new entity and the cycle goes on.  All are alter egos of Chad Kennedy.  All are, or have been, willfully engaging in conduct outlined in this complaint."  #33 at pp. 3-4.

includes its breach of copyright, but repeated violations of the Tariff Act of 1930, 28 U.S.C. § 1581(a).[14]

_____

[14]    Although not cited by AllChem, 29 U.S.C. § 1526(a) provides,

(a)  Importation prohibited

Except as provided in subsection (d) of this section, it shall be unlawful to import into the United States any merchandise of foreign manufacture if such merchandise, or label, sign, print, package, wrapper, or receptacle, bears a trademark owned by a citizen of, or by a corporation or association created or organized within, the United States, and registered in the Patent and Trademark Office by a person domiciled in the United States, under provisions of sections 81 to 109 of Title 15, and if a copy of the certificate of registration of such trademark is filed with the Secretary of the Treasure, in the manner provided in section 106 of said Title 15, unless written consent of the owner of such trademark is produced at the time of making entry.

Section 526(a) prohibits the importation of "gray market" goods, which are goods manufactured in a foreign country, but which bear a valid United States trademark and which are imported without the consent of the trademark owner. *K Mart Corp. v. Cartier, Inc.*, 485 U.S. 176, 179 (1988).

Plaintiff's bare-bones, vague allegations, #28 at ¶ 39 fail to state a clear claim under the Tariff Act:

Kennedy's and his three Shiner entities' importation of trichlor from China, to or through Mexico, is in violation of the trade regulation laws of the United States, including without limitation the Tariff Act of 1930, 19 U.S.C. § 1 *et seq.*, including without limitation its provisions concerning antidumping violations found at 19 U.S.C. § 1673 *et seq.* and its provisions concerning North American Free Trade, 19 U.S.C. § 331 *et seq.* and the regulations promulgated by the United States Immigration and Customs Enforcement and its successor entities pursuant to the authority conveyed by Congress in the pertinent statutes.

AllChem maintains that tortious copyright infringement establishes minimum contacts here and gives rise to personal jurisdiction over a nonresident defendant.  AllChem contends that if a nonresident commits an intentional tort outside of the state that has a negative effect in the state, minimum contacts are established.  *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999).  It argues that copyright infringement is an intentional tort.  *Illustro Systems International, LLC. v. IBM Corp. and IBM Nederland N.V.*, Civ. A. No. 3:06-CV-1969-L, 2007 WL 1321825 (N.D. Tex. May 4, 2007).  Therefore, insists AllChem, the minimum contacts requirement has been met and the Court has personal jurisdiction over Movants.

Because Defendants intentionally and knowingly stole the Texas EPA registration number belonging to AllChem and used it as their own, they have committed an act for which they could reasonably have foreseen being haled into this Court.  It was not an innocent mistake with tangential effects in Texas.

AllChem further insists that this Court has jurisdiction based on Defendants' engagement in interstate commerce; they acquire the trichlor in China and circumvent United States law by bringing the product in through Mexico.  Defendants claim that Shiner Products is "in the business of selling and distributing gear driven knockout tools."  #31 at p. 3.  Yet Shiner Produce has obtained a DOT Number citing interstate carrier operations.  It lists, under

-22-

"cargo carried," only household goods and chemicals; no tools are listed as cargo shipped.   #33, Ex. C, Printout from Dep't of Transportation's website.   AllChem maintains that this is another example of Kennedy's scheme in which he performs such acts repeatedly and then provides a superficial excuse to avoid liability.

Contrary to Defendants' claim, argues AllChem, venue is proper here:  because Defendants are corporations in this action over which the Court has personal jurisdiction, venue is proper in any district in Texas. 28 U.S.C. § 1391(c).[15]

### Defendants' Supplemental Reply (#38)

Challenging AllChem's citation to *Guidry* regarding intentional torts and personal jurisdiction as inapposite, Defendants claim that AllChem  incorrectly applies the "effects test" set forth in

---

[15] Section 1391(c) provides,

For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.  In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

*Calder v. Jones.*[16]  In *Calder*, the Supreme Court highlighted the facts that defendants knew their article not only involved a California resident and would be distributed in that state, but also that it would have a potentially devastating impact on her in the state in which she lived and worked and in which the article would have its largest circulation.  465 U.S. at 789-90.

The Fifth Circuit has repeatedly stated that the *Calder* effects test was not limited solely to libel cases.  In *Guidry*, 188 F.3d at 629, on which AllChem solely relied for the proposition that there is personal jurisdiction over a nonresident defendant for an act committed outside the forum state which causes tortious injury in the forum state, the Fifth Circuit discusses under what circumstances the *Calder* effects test can satisfy minimum contacts for personal jurisdiction:

> When a nonresident defendant commits a tort within the state, or an act outside the state that causes tortious injury within the state, that tortious conduct amounts to

---

[16] *Calder v. Jones*, 465 U.S 783, 789-90 (1984).  The effects test allows a court to exercise personal jurisdiction over a defendant if the (1) the defendant committed an intentional tort (2) expressly aimed at the forum state, (3) that caused harm to the plaintiff in the forum state which the defendant knows is likely to be suffered.  AllChem argues that just as the Supreme Court made clear in *Calder* that the Florida defendants knew the defamatory article they were publishing in Florida would have a significant injurious effect on the plaintiff's reputation in California, where the defendants knew that it would be distributed, that the defendants had "expressly aimed" the tort at California, and thus the defendants were subject to personal jurisdiction in California, Aqualine knew that stealing AllChem's registration numbers would have a significant impact on AllChem in its registered state of Texas.

> sufficient minimum contacts with the state by the
> defendant to constitutionally permit courts within that
> state, including federal courts, to exercise personal
> adjudicative jurisdiction over the tortfeasor and the
> causes of actions arising from its offenses of quasi-
> offenses. . . . Even an act done outside the state that
> has consequences or effects within the state will suffice
> as a basis for jurisdiction in a suit arising from those
> consequences if the effects are seriously harmful and
> were intended or highly likely to follow from the
> nonresident defendant's conduct.

*Id.* at 628.  In *Guidry* the Fifth Circuit found that an intentional

tort causing death or serious physical harm.  Plaintiff, who became

addicted to a contracted cancer from smoking tobacco, specifically

alleged intentional misrepresentations in the sale and

advertisement of tobacco products that such products were not

addictive or carcinogenic, which had "effects" in the forum state

that were as "pronounced" as the libel case in *Calder,* resulting in

bodily harm and death to the citizens of plaintiff's state*.  Id.* at

629-30.[17]

Defendants distinguish the instant action on the grounds that

Defendants did not distribute the trichlor with the allegedly

infringing copyright label in Texas.  Nor have they directed any

activities toward AllChem to create the type of seriously harmful

injury to AllChem which would permit personal jurisdiction over a

nonresident defendant based on activities occurring outside

---

[17] Even a single act directed toward a forum state that gives
rise to a cause of action can support a finding of minimum
contacts.  *See, e.g., Wien Air Alaska, Inc. v. Brandt*, 195 F.3d
208, 211 (5th Cir. 1999); *Brown v. Flowers Indus.*, 688 F.2d 328,
332-32 (5th Cir. 1982).

AllChem's home state of Arizona.  They also point out that AllChem
fails to cite a copyright infringement case or any other
intellectual property case/intangible property case that gives rise
to personal jurisdiction over a nonresident defendant based on
actions not occurring in the plaintiff's forum state.  They
maintain that intellectual property cases do not involve
intentional torts that cause death or serious injury to an
individual or serious damage to tangible property, nor do they
involve torts resulting in damaging effects that disproportionately
fall in the plaintiff's state of residence.

Finally, Defendants point out that 28 U.S.C. § 1391(a) refers
only to diversity jurisdiction.  Because this case presents federal
question jurisdiction under the Lanham Act and the Copyright Act,
jurisdiction is not founded solely on diversity and 28 U.S.C. §
1391(b) applies.  Title 28 U.S.C. § 1391(c)("a defendant that is a
corporation shall be deemed to reside in any judicial district in
which it is subject to personal jurisdiction at the time the action
is commenced") is not a separate basis for venue; it clarifies what
qualifies as a corporation's residence for purposes of § 1391(a)(1)
and §1391(b)(1).[18]  Kennedy is an individual residing in Arizona,

---

[18] Section 1391(b)(1) provides,

A civil action wherein jurisdiction is not founded solely
on diversity of citizenship may, except as otherwise
provided by law, be brought only in (1) a judicial
district where any defendant resides, if all defendants
reside in the same State, (3) a judicial district in

while Aqualine and the Shiner entities are and always have been residents of Arizona and are subject to personal jurisdiction in Arizona.  They are not residents of Texas nor subject to personal jurisdiction there.  Therefore venue in the Southern District of Texas is improper as to all of them.  Conversely, the District of Arizona satisfies § 1391(b)(1) as "a judicial district where any defendant resides, if all defendants reside in the same State."

Finally Defendants point out that AllChem has not contested or responded to the motion to transfer for forum *non conveniens* under 35 U.S.C. § 1404(a).  They argue that private and public concerns here support such a transfer to the District of Arizona.  Regarding the private factors, the relevant witnesses are located in the District of Arizona, all of the named defendants are located in Arizona, all of the actions alleged in the Second Amended Complaint occurred in Arizona, and the party and non-party fact witnesses are likely all located in Arizona.  Thus the relative ease of access to sources of proof, the place of the alleged wrong, the availability of compulsory process to secure the attendance of witnesses, the cost of attendance for willing witnesses and all other practical aspects favor a transfer to the Phoenix Division of the District of

---

which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

-27-

Arizona.   Regarding the public factors, Defendants suggest that
this court and the Phoenix court have full dockets and are familiar
with federal copyright and unfair competition law that governs this
case.  Because there is no connection between this district and the
claims asserted by AllChem, Defendants argue that only the Phoenix
Division of the District of Arizona has an interest in having the
issues decided in its court.

### Court's Decision

After  careful  review  of  the  parties'  submissions  and  the
applicable law, the Court finds that agrees with moving Defendants
that it lacks personal jurisdiction over them, that venue is not
proper in the Southern District of Texas, and that this case should
be transferred to the Phoenix Division of the District of Arizona
under 28 U.S.C. § 1406(b).

There is no argument here that Defendants have continuous and
systematic contacts with Texas to support general jurisdiction in
this action.

The Court finds that Plaintiff has failed to allege sufficient
facts to establish a prima facie case of specific personal
jurisdiction.   The closest that Plaintiff comes to pleading a prima
facie case of personal jurisdiction is in its argument that the
Court has personal jurisdiction under the *Calder* effects test that
their intentional tortious acts harmed AllChem in Texas.  Plaintiff
has not alleged facts showing that Defendants committed any acts in

-28-

the forum state nor alleged any sale or purchase of AllChem's
infringing product in Texas.   Nor does AllChem allege that
Defendants intentionally directed their activities to Texas.
Indeed, the complaint alleges no direct relationship, contractual
or other, nor direct contact between, AllChem and Defendants.   Nor
has Plaintiff alleged any facts showing that the nonresident
Defendants purposely availed themselves of the benefits and
protections of Texas.   In *Guidry*, 188 F.3d at 629, the Fifth
Circuit expanded the reach of the *Calder* effects test beyond libel
to intentional and unintentional torts that caused death or serious
physical harm to the Plaintiff in the forum state.   In *Guidry*, the
Fifth Circuit noted that the defendants were not sued for "mere
untargeted negligence endangering only economic or reputational
interests," but instead with acts that would potentially have a
"devastating physically harmful impact" on the plaintiffs.   188
F.3d at 630.   In the instant case Plaintiff fails to allege that
Defendants' alleged tortious copyright infringement or unfair
competition actions caused serious injury or death.   In fact, the
only injury alleged is financial.

In addition, in *Allred v. Moore & Peterson*, 117 F.3d 278, 286
(5th Cir. 1997)(emphasis added)(agreeing with and quoting *Wallace
v. Herron*, 778 F.2d 391, 395 (7th Cir. 1985), *cert. denied*, 475 U.S.
1122 (1986)), *cert. denied*, 522 U.S. 1048 (1998), the Fifth Circuit
opined, "[T]he key to *Calder* is that the effects of an alleged

intentional tort are to be assessed as *part* of the analysis of the defendant's relevant contacts with the forum." *See also Kwik-Kopy Corp. v. Byers*, 37 Fed. Appx. 90, No. 01-20748, *5 (5th Cir. May 9, 2002)(""Since the decision in *Calder*, this court has inferred that specific jurisdiction requires more that 'one act' with the forum state and explained that the 'effects test' is not a substitute for a nonresident's minimum contacts that demonstrate purposeful availment of the benefits of the forum state, but should be assessed as a *part* of the analysis of the defendant's relevant contacts with the forum state. [*citing Allred*]"). Furthermore, in *Moncrief Oil Intern., Inc. v. OAO Gazprom*, 481 F.3d 309, 314 (5th Cir. 2007), the Fifth Circuit cautioned restraint in the application of "effects jurisdiction":

> "Effects" jurisdiction is premised on the idea that an act done outside the state that has consequences or effects within the state can suffice as a basis for personal jurisdiction if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct. *See Guidry*, 188 F.3d at 628. Such jurisdiction is rare. We have expressly declined to allow jurisdiction for even an intentional tort where the only jurisdictional basis is the alleged harm to a Texas resident. *See Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d at 870 (5th Cir. 2001).

Because the Court concludes that Plaintiff has failed to establish minimum contacts of Defendants with Texas, it does not reach the question whether the exercise of jurisdiction would violate notions of fair play and substantial justice. *Moncrief*, 481 F.3d at 314-15.

"Once venue is challenged, in actions involving multiple claims and multiple defendants, the plaintiff has the burden of showing that the chosen venue is proper as to each claim and each defendant. *Collins v. Doe*, Civ. A. No. H-10-2882, 2012 WL 1414246, *3 (S.D. Tex. Apr. 23, 2012). The venue of suits for infringement of copyright is not determined by the general provision [§ 1391(b)] governing suits in federal district courts," but is instead controlled by 28 U.S.C. § 1400(a)("Civil actions, suits, or proceedings arising out of any Act of Congress relating to copyrights . . . may be instituted in the district in which the defendant or his agent resides or may be found."). *Lumiere v. Mae Edna Wilder, Inc.*, 261 U.S. 174 (1923); *id.*, *citing Time, Inc. v. Manning*, 366 F.3d 690, 696 (5th Cir. 1966). The Fifth Circuit construes § 1400(a) to allow venue in any judicial district in which the defendant or agent resides or may be found. *Collins v. Doe*, 2012 WL 1414246, *3, *citing Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1126 (9th Cir. 2010), and *Palmer v. Braun*, 376 F.3d 1253, 1259 (11th Cir. 2004). Defendants are correct in applying the general venue statute, 28 U.S.C. § 1391(b)(1)-(2), here to the Lanham Act claims. With regard to both claims, venue in the Southern District of Texas is improper and proper in the Phoenix Division of the District of Arizona.

Accordingly, the Court

ORDERS that Defendants' motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) and to transfer venue under Rule 12(b)(3) and § 1406(a) is GRANTED and this case is TRANSFERRED to the Phoenix Division of the District of Arizona.

**SIGNED** at Houston, Texas, this __13th__ day of __July__, 2012.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE